**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------

WELLINGTON JOHNSON, JR.,

                Petitioner,

        v.                                     No. 04-CV-751
                                                      (DNH/DRH)

CALVIN E. WEST,

                Respondent.
-----------------------------------------------------------------

**APPEARANCES:**                             **OF COUNSEL:**

WELLINGTON JOHNSON, JR.
Petitioner Pro Se
No. 01-B-0830
Elmira Correctional Facility
Post Office Box 500
Elmira, New York 14902-0500

HON. ELIOT SPITZER                   ALYSON J. GILL, ESQ.
Attorney General for the State         Assistant Attorney General
  of New York
120 Broadway
New York, New York 10271

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

Petitioner Wellington Johnson, Jr. ("Johnson") is currently an inmate in the custody of the New York State Department of Correctional Services ("DOCS") at Elmira Correctional Facility. On February 10, 2001, Johnson was convicted of second degree Manslaughter (Penal Law §125.25(1)) by jury trial in the Madison County Court.  On April 9, 2001, Johnson was

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

sentenced to an indeterminate prison term of 25 years to life. Johnson now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on several grounds, including (1) his brother was acting as an agent of the police at the time he made inculpatory statements to his brother, (2) he was entitled to a missing witness charge for a medical examiner that did not testify at trial, and (3) he was denied the effective assistance of both trial and appellate counsel. For the reasons which follow, it is recommended that the petition be denied.

### I. Background

On February 20, 2000, the body of Frank Coleman was found in a snow bank on Shackleton Point Road. T. 606-612.[2] Coleman was killed after he was struck in the back of the head with a bar and his throat was crushed. T. 1674, 1675-76, 1678. Both the victim and Johnson worked at Brocco Foods, a meat packing plant. T.1369, 1392, 1539. The victim's last known whereabouts prior to disappearance was at Brocco Foods – the victim and Johnson were cleaning up and were the last two to at Brocco Foods that night.[3] T. 1393-94, 1399, 1454-55.

On February 21, 2000, the police visited Brocco Foods and requested an interview with Johnson. Because Johnson was scheduled to work with the victim on the night of the victim's disappearance, he was believed to be the last person to see the victim alive. T. 1241, 1333-1334. The police investigators requested that Johnson accompany them back to the

---

[2] "T." followed by a number refers to the pages of the trial transcript included with respondent's answer. Docket No. 25.

[3] Coleman called his wife at 6:30 pm and informed her that he was at Brocco Foods, still cleaning up. T. 1520, 1555-56.

stationhouse to complete an interview and to provide a detailed statement to the police to aid in their investigation. T.1263. Johnson consented to go to the police station, provided an interview, submitted a sworn statement, and allowed the police to search his car. Johnson was given breaks to eat and use the restroom. At no point did Johnson request a lawyer during his interview session on February 21, 2000. During Johnson's February 21, 2000 visit to the stationhouse, was he not advised of his Miranda rights.

On February 22, 2000, police visited the residence of Alan Johnson, Johnson's brother, to interview him. The police had occasion to speak to Johnson's brother, but had no knowledge of any opportunity for Johnson's brother to meet with him. Although Alan Johnson did later speak to his brother and obtain information helpful to the investigation, prior to his visit with Johnson, the police provided Alan Johnson with neither any instructions nor assistance. Rather, the police provided Alan Johnson with at most a "generalized encouragement" to gain helpful information.

On February 29, 2000, Alan Johnson visited his brother, Johnson, while Johnson was incarcerated in Oneida County Jail on unrelated charges. Johnson admitted killing Coleman to his brother, and made several other inculpatory statements. Johnson then informed his brother of the location of certain evidence. Johnson requested that Alan Johnson or other family members present at the jail visit that day remove and dispose of the evidence, including: the pry bar used to kill Coleman, plastic or latex gloves that may have blood on them, and a plastic shopping bag containing bloody plastic bags. T.694-696. Johnson's brother informed the police of the location of both the pry bar used to kill Coleman and the bloody bags used to wrap and dispose of Coleman's body. T.707, 716-17. For this information, Johnson's brother was rewarded $1,000 for his cooperation with the investigation. T.707, 716-17.

Johnson may now obtain habeas relief by showing that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court." 28 U.S.C. §2254(d)(1). By "contrary to," the state court decision may be either contrary to Supreme Court precedent on a question of law or the state court decision is opposite to a relevant Supreme Court case with "materially indistinguishable" facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). By "unreasonable application," a state court must first "correctly identif[y] the governing legal rule," yet then apply that rule to the facts of a particular case in an "objectively unreasonable" manner. Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

## II. Discussion

### A. Agency

Johnson claims that his brother, Alan Johnson, was acting as an agent of the police at the time he made inculpatory statements to his brother. Johnson further claims that those inculpatory statements should have been precluded from evidence as the prosecution did not ever serve notice to Johnson of prosecution's intention to use said inculpatory statements.

The Appellate Division rejected Johnson's claims, and that rejection was neither contrary to, nor unreasonable application of, clearly established Supreme Court precedent. Moreover, in its determination that Johnson's brother was not acting as an agent of the police, the Appellate Division found that "the police gave [petitioner's brother] no instructions, offered no assistance in obtaining the inculpatory statements, and the brief mention of the fund for confidential information constitutes, at most, 'generalized encouragement.'" People v. Johnson,

303 A.D.2d 830, 833-34 (3d Dep't 2003) (citations omitted). This factual determination is both supported by the record and entitled to a presumption of correctness.

While investigating the Coleman murder, Investigator Lane J. Newton testified that he had been to the home of Johnson's brother on several occasions. H. 56-57.[4] On one such visit, Newton interviewed Johnson's brother. H. 58-60. At the end of Newton's interview with Johnson's brother on February 22, 2000, Newton mentioned that there existed a confidential fund program for person's providing useful information for investigations. H.65. Further, Newton informed Johnson's brother that information on the Coleman homicide could be worth some money. H. 65.

On February 26, 2000, police learned that another of Johnson's relatives was planning to visit him in jail. H. 60. Johnson's brother was the usual method of transportation for the visiting family member. H. 60-61. On February 29, 2000, the visit to Johnson occurred; Johnson made inculpatory statements to his brother. On March 2, 2000, police contacted Johnson's brother "to touch base," at which point Johnson's brother disclosed to the police information on locations of both the murder weapon and the bloody bags used to transport and dispose of the bodies. H. 66-67, 69, 71. Further, Johnson's brother told police that the information he provided came from Johnson. H. 74. Accordingly, Johnson's brother was paid $500 that same day, with an additional payment of $500 on March 9. H. 78, 81, 83.

As will be discussed below, federal precedent supports findings that, at the time Johnson made inculpatory statements to his brother, (1) Johnson's brother was not an agent of the police and (2) Johnson's Sixth Amendment rights had not yet attached.

---

[4] "H." followed by a number refers to the transcript of the suppression hearing dated Dec. 7, 2000 included with respondent's answer. Docket No. 25.

In order to get the information from Johnson's brother, the police did not solicit a statement from him, gave no instructions on how he should conduct his February 29 visit with Johnson, offered him no assistance, and offered only generalized encouragement to come forth if Johnson's brother had any information. After adjudicating on the merits, the Appellate Division rejected Johnson's claim, stating that his conduct was not "so pervaded by governmental involvement that it … invoked the full panoply of constitutional protections." Johnson, 303 A.D.2d at 833-34. The state court's determination that Johnson's brother was not acting as an agent of the state was a factual determination that was supported by the record; therefore, this determination is entitled to a presumption of correctness. 28 U.S.C. §2254 (e)(1).

This presumption of correctness is not insulated from attack. The petitioner may rebut the presumption of correctness by clear and convincing evidence given to a state court determination. Here, Johnson has not done so. Although Johnson claims that there was an agreement between his brother and police for payment of useful information, he brings forth no evidence to support such a claim. Docket No. 1 at 8. The Appellate Division reasoned that absent any evidence that the police were accountable and responsible for petitioner's motivation to provide incriminating information, there would be no finding of agency for suppression purposes. Johnson, 303 A.D.2d at 834.

Although Johnson's brother did not act as an agent of the police, the remainder of this section supposes the opposite in order to examine any potential violation of petitioner's constitutional rights afforded by the Sixth Amendment.

At the time that Johnson made inculpatory statements to his brother, his Sixth Amendment Constitutional right to counsel had not yet attached with respect to the Coleman

homicide. The Sixth Amendment provides a right to council that attaches at the first "critical stage" of the proceedings. United States v. Gouvia, 467 U.S. 180, 187, 188 (1984). The critical stage is "the initiation of adversary[ial] judicial proceedings," after which, any further efforts to elicit information from the accused, including interrogation, invokes the Sixth amendment. Id.; Maine v. Moulton, 474 U.S. 159 (1985); United States v. Henry, 47 U.S. 264 (1980); Massiah v. United States, 377 U.S. 201 (1964). In federal law, the critical stage is deemed the arraignment. That is, after a formal accusation of a suspect has been made, techniques the police may employ at earlier stages of the investigation for eliciting information from an uncounseled suspect may no longer be used on an uncounseled "accused."

Here, Johnson's Sixth Amendment rights with respect to the Coleman homicide had not yet attached at the time he made his incriminating statements to his brother. Johnson made inculpatory statements to his brother on February 29, 2000 while in jail on an unrelated charge.[5] It was not until March 9 that Johnson was arrested for the Coleman homicide. Further, Johnson was arraigned on March 16. Therefore, Johnson made his incriminating statements to his brother well before March 16, the date in which his Sixth Amendment right to counsel attached.

While it is true that Johnson's Sixth Amendment right to counsel may have attached for the violation of an order of protection, this is irrelevant to the current determination. In federal law, the Sixth Amendment right to counsel is offense specific, so the police may question a suspect with regard to any matter unrelated to the matter for which the Sixth Amendment right

---

[5] While investigating the Coleman Homicide, police learned that the petitioner had an outstanding warrant for a violation of an order of protection. H. 93, 106-07. On February 22, 2000, the petitioner was detained on that outstanding warrant and detained in the Oneida County Jail.

to counsel has attached. McNeil v. Wisconsin, 501 U.S. 171, 175 (1991). The test is "whether each offense requires proof of a fact that the other does not." Texas v. Cobb, 532 U.S. 162, 173 (quoting the meaning of "offense" as derived in Blockburger v. United States, 284 U.S. 299, and reasoning that the meaning is the same in double jeopardy and right to counsel contexts). Here, a violation of an order of protection in one town is a totally different offense and unrelated to the murder of Coleman in another town. Therefore, Johnson's Sixth Amendment right to counsel was not violated.

In sum, Johnson's brother was not acting as an agent of the police when Johnson made inculpatory statements to him. In any event, Johnson's Sixth Amendment right to counsel for the Coleman murder did not attach until arraignment, well after he made inculpatory statements to his brother.

Therefore, the petition on this ground should be denied.

### B. Missing Witness Charge

Johnson claims that he was denied his right to due process and a fair trial by the trial court's refusal to give a missing witness jury instruction charge for the prosecution's failure to call as a witness a pathologist who would have testified to Coleman's time of death. The trial court rejected Johnson's claim for a missing witness charge. On direct appeal, the Appellate Division affirmed the trial court's determination, holding that the pathologist's testimony would have been cumulative to the medical examiner's testimony in the case. See Johnson, 303 A.D.2d at 834.

On February 7, 2001, the prosecutor discussed with the court his plans to call a

pathologist to testify to Coleman's stomach contents in relation to his "possible time of death" because the medical examiner was uncomfortable doing that.[6]  T. 1481.  On February 9, 2001, without having called the pathologist, the prosecution informed the court that the pathologist would not testify.[7]  T. 1742.  However, it was clear that the medical examiner offered sufficient testimony about Coleman's death and that the pathologist's testimony was cumulative.  So clear, in fact, that the both the trial court and Appellate Division held the pathologist's testimony would have been cumulative, therefore unnecessary and undeserving of a missing witness charge.  Johnson, 303 A.D.2d at 834.

     Under Supreme Court law, the state trial court's jury instructions are ordinarily not a matter that raises a federal question, but rather, state court jury instructions' propriety is ordinarily a matter of state law.  See Cupp v. Naughton, 414 U.S. 141, 146 (1973).  Even if a jury instruction was improper under state law, it does not automatically warrant a federal habeas corpus relief.  For federal relief, the petitioner must show not merely that a jury instruction was "undesirable, erroneous, or even 'universally condemned,'" but also that it violated some right that was guaranteed to him by the federal constitution.  Naughton, 414 U.S. at 146.  The test is, "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  Grey v. Henderson, 788 F. Supp. 684, 693 (E.D.N.Y.), aff'd, 956, F.2d 1161 (2d Cir. 1992) (quoting Naughton, 414 U.S. at 147).

---

[6] The medical examiner gave an opinion that Coleman died Friday evening and the pathologist's opinion would not have contradicted the medical examiner testimony. T. 1829.

[7] At the time of the petitioner's trial, the pathologist who was subpoenaed and scheduled to testify was currently in the midst of testifying on a quadruple homicide case in federal court in Boston.

Here, the omission of a missing witness charge for the pathologist's cumulative testimony did not violate any right guaranteed by the federal Constitution. Rather, any error in the trial court's refusal to grant the missing witness charge was harmless because of the overwhelming evidence of the petitioner's guilt. Penry v. Johnson, 532 U.S. 782, 795-96 (2001); Brecht v. Abramson, 507 U.S. 619, 638 (1993). Johnson admitted to his brother that he committed the murder and disposed of Coleman' body through the use of petitioner's car trunk. The police located both the murder weapon and the plastic bags. Also, Johnson attempted to have his son dispose of the incriminating boots that the petitioner wore during Coleman's murder.

Thus, evidence of Johnson's guilt was overwhelming and the failure to give a missing witness charge for cumulative testimony did not have a substantial, injurious effect on the jury. Therefore, Johnson has failed to demonstrate that the state court's rejection of his claim denied him of a fair trial and due process.

Therefore, the petition on this ground should be denied.

### C. Effective Assistance of Counsel

Johnson claims that he was denied the effective assistance of counsel guaranteed by the Sixth Amendment. The Appellate Division rejected this claim on direct appeal. The Appellate Division's holding was neither contrary to, nor an unreasonable application of Supreme Court precedent in Strickland v. Washington, so the petition on this ground should be denied. Strickland v. Washington, 466 U.S. 668, 687 (1984).

The Strickland test defines the standard applied to a claim of ineffective assistance of trial counsel. Id. Petitioner must show that both counsel supplied deficient

representation and petitioner suffered prejudice as a result of that deficient representation. Id. at 687. Under the first prong, counsel's conduct must have "so undermined the proper functioning of the adversarial process" that the process "cannot be relied on as having produced a just result." Id. at 689-90. Under the second prong, the petitioner "must show that there is a reasonable probability that, but for the counsel's unprofessional" or erroneous advice, the result of the trial could have been different. Id. at 694.

There are additional considerations to the Strickland test in applying the two-prong test mentioned previously. There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in all significant decisions. Id. at 689-90. In addition, although there are two prongs to the Strickland test, the reviewing court need not address both. Where a court can "dispose of an ineffective assistance of counsel claim on the ground of lack of sufficient prejudice," the court should do so. Id. at 697.

Here, Johnson cannot meet either prong of the Strickland test, for all claims of ineffective assistance of trial counsel are meritless. Previously, all of these claims were raised on direct appeal to the Appellate Division where they were addressed and rejected. All of the alleged grounds of deficient representation are consistent with the defense counsel's "rush to judgment theory" by the police that they rushed to arrest, indict, and take petitioner into custody.

Specifically, defense trial counsel's statements that Johnson was in custody for murder was meant to gauge the jury and discourage improper prejudices from forming. Johnson, 303 A.D.2d at 835. By failing to object to testimony of Johnson's incarceration for violating an order of protection, defense trial counsel was again bolstering the argument that

-11-

the police excluded other suspects to their *rushed* belief that petitioner was guilty. Johnson, 303 A.D.2d at 836. In failing to object to testimony on uncharged crimes, defense trial counsel was trying to show the jury that although against the law, Johnson was truthful in his statement of events,[8] that Johnson sold crack cocaine (an uncharged crime), therefore Johnson was more believable than the prosecution's events, that Johnson murdered Coleman. Johnson, 303 A.D.2d at 835. In eliciting the suppressed statement that Johnson made to police – that he bet them a steak dinner that the police discovery of a substance they thought to be blood was not so – defense trial counsel showed both that the police *rushed* to judgment before testing the discovered substance and that Johnson was correct, the substance was not blood. T. 1314. Therefore, these actions and inactions were consistent with the defense counsel's reasonable professional theory of "rushing to judgment."

Johnson has additional claims of ineffective assistance of counsel that were not part of the reasonable professional theory of the case, but still did not yield any prejudice to petitioner. As the Appellate Division held, Johnson's trial counsel's failure to object to the testimony of one witness that petitioner liked to gamble did not unfairly prejudice Johnson when his own son testified at length to spending an afternoon with petitioner betting on horse races. See T. 1421-23; T.901; see also Johnson, 303 A.D.2d 830, 836. Similarly, that trial counsel elicited a hearsay statement from Matthew Johnson that boots at his house were his ticket to not get in trouble is not prejudicial to the petitioner, as that hearsay

---

[8] Petitioner provided in his statement to the police that he was selling crack cocaine at certain locations at the same time that the People were asserting at trial that petitioner was in a different location, dumping the murdered body of Coleman. T. 1286-88.

statement only suggests that Matthew Johnson – not Johnson – had something to hide. Johnson's claim that trial counsel erred in failing to request a circumstantial evidence charge was specifically rejected by the Appellate Division. The Appellate Division reasoned that where direct evidence existed, so a circumstantial evidence charge was inappropriate. Id. at 836. Therefore, failure to request a circumstantial evidence charge could not have prejudiced Johnson; such a charge was unwarranted.

Finally, Johnson correctly claims that trial counsel erred in failing to request a limiting instruction for Johnson's sale of crack cocaine, an uncharged prior act. However, this error was not so egregious as to deprive the petitioner of a fair trial. As previously discussed, the testimony of the previous uncharged crime was meant to illustrate to the jury Johnson's truthful recollection of events, bolstering the "rush to judgment theory."

In sum, the Appellate Division has rejected all of Johnson's claims regarding counsel's performance. Many of Johnson's claims for ineffective assistance of counsel were the result of trial counsel's reasonable professional choice in the theory of the case. Moreover, Johnson's other claims of ineffective assistance of counsel were not clearly egregious attorney errors or actions that resulted in substantial prejudice. The rejection of these claims by the Appellate Division is neither contrary to, nor an unreasonable application of, Strickland.

Therefore, the petition on this ground should be denied.

### D. Effective Assistance of Appellate Counsel

Johnson claims that he was denied effective assistance of appellate counsel. The Appellate Division has previously rejected this same claim when Johnson raised it with an

application for a writ of error coram nobis.  The Appellate Division's decision was not "contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court" in Strickland.  The petition should therefore be denied.

The Strickland test is the standard for a claim of ineffective assistance of both trial counsel and appellate counsel.  The same two-prong test applies as was previously discussed above.  That is, the appellate counsel's representation was fundamentally defective, and but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different.  Strickland, 466 U.S. at 687, 694.

In order to satisfy the first prong of Strickland, it is not enough for a petitioner to show that appellate counsel omitted a non-frivolous argument.  Aparicio v. Artuz, 269 F.3d at 95.  Counsel is neither required to raise all potentially meritorious claims nor required to raise defendant's requested claims on appeal.  Id.; Jones v. Barnes, 463 U.S. 745, 751 (1983); Jameson v. Coughlin, 22 F.3d 427, 429 (2d Cir. 1994).  Further, counsel is "strongly presumed to have rendered adequate assistance" and "counsel may on appeal focus on the one or two issues that have the most promising issues for review."  Strickland, 466 U.S. at 689-90; Barnes, 463 U.S. at 751-53.  The satisfaction of the second prong of the Strickland test for appellate counsel is exactly that previously discussed above.

Here, the appellate counsel chose to argue three main issues on appeal, choosing to forgo arguing additional weaker points.  First, appellate counsel argued that the trial court erred in denying Johnson's motion to preclude his inculpatory statement made to his brother on the ground that Johnson's brother was acting as an agent of the police with no notice provided to petitioner of such statement.  Second, appellate counsel argued that the trial court erred in denying Johnson's request for a missing witness charge at the absence of a

pathologist who would testify to the pinpoint time of Coleman's death. Third, appellate counsel argued that the trial counsel was ineffective, advancing several reasons.

Johnson's appellate counsel chose only a few strong points for appeal, "emphasizing the most promising for review." Barnes, 463, U.S. at 751-53. However, Johnson claims ineffective assistance of appellate counsel for counsel's failure to raise an alleged discussion between Coleman's family and several sworn jurors. The record does not support such a claim. There was a point during jury selection where it became known that a juror's daughter attended the same school as a member of Coleman's family. After questioning in chambers, it was determined that the juror did not know the Coleman family. T. 555-57. The court was satisfied that there was no relationship; the juror was allowed to sit on the case. Further, given the complete absence of any evidence in the record of a discussion between jurors and the victim's family, there was no claim for appellate counsel to argue during appeal.

In sum, the Appellate Division determined that appellate counsel provided effective assistance of appellate counsel to the petitioner. The rejection of Johnson's claim is neither contrary to, not an unreasonable application of, clearly established Supreme Court law.

Therefore, the petition on this ground should be denied.

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the

foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

Dated: January 9, 2007
         Albany, New York

_____
United States Magistrate Judge

_____
United States Magistrate Judge